1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RONEY R. NUNES,

11           Petitioner,                    No. CIV S-98-1333 DFL  KJM P

12       vs.

13   ANA RAMIREZ-PALMER,

14           Respondent.                    FINDINGS AND RECOMMENDATIONS

15   _____/

16           Petitioner is a California prisoner proceeding with counsel with an application for

17   a writ of habeas corpus under 28 U.S.C. § 2254.  He challenges his 1995 Santa Clara County

18   conviction for petty theft with a prior and his twenty-five-years-to-life "three strikes" sentence.

19           Petitioner raises four claims of error:  (1) his 25-years-to-life sentence constitutes

20   cruel and unusual punishment; (2) petitioner's due process rights were violated when the trial

21   court denied petitioner's motion to recuse prosecutor, and vindictive prosecution; (3) petitioner's

22   due process were violated when the trial court used petitioner's unconstitutional priors to

23   enhance petitioner's sentence and denied petitioner's motion for a Sumstine hearing; and (4)

24   petitioner's due process rights were violated when the trial court failed to instruct on the

25   definition of reasonable doubt during the sentence enhancement phase of the trial.  Respondent

26   has filed an answer, and petitioner a traverse.

1

I.  Factual And Procedural Background

On direct appeal, the California Court of Appeal summarized the facts elicited at petitioner's jury trial as follows:

> Just before closing time on March 12, 1995, defendant attempted to leave a Home Depot store through the entrance, and an alarm went off.  Home Depot places "Sensormatic" tags on some of its merchandise.  Unless the "Sensormatic" tag is deactivated at a cash register, it will set off the alarm at the exit or entrance. Defendant was the only person near the entrance when the alarm went off.  A Home Depot employee asked him if he was returning an item, and defendant said he was not.  He told the Home Depot employee that his pacemaker had set off the alarm.  Jimmy Torres, Home Depot's plainclothed loss prevention officer, observed this encounter and began watching defendant.  Defendant sat down on a bench by the entrance for a couple of minutes.  He then proceeded to another part of the store.  Torres noticed that defendant was "walking funny."
>
> Defendant went part of the way down one of the aisles and stopped.  He began removing Home Depot merchandise from underneath his sweater.  After removing these items from his clothing and placing them on a shelf, defendant took one of the items, a tool set, and removed part of the packaging, including the Sensormatic tag, from the tool set.   He concealed the removed packaging behind a display.  Defendant proceeded to again conceal all of the items under his sweater.  Defendant walked to the back of the store and then went to the front of the store.   He walked past the cash registers without stopping and exited the store.  Torres detained defendant and identified himself as "Home Depot Security." Defendant responded that "I'm going to pay for it" and "I'm just looking for my wife."  Torres told defendant he was under arrest and escorted him back into the store.  Upon reentering the store, defendant began removing items from his clothing and throwing them.  He ignored Torres's request that he stop doing this.  Torres tried to handcuff defendant, but defendant resisted and it was necessary for Torres and another Home Depot employee to take defendant "to the ground" in order to successfully handcuff defendant.  The Home Depot merchandise found in defendant's possession was worth $114.40.   Torres turned defendant over to the police.

Answer, Ex. F at 2-3.

Petitioner's appeal, in which petitioner asserted the Eighth Amendment claim for cruel and unusual punishment presented in this action as claim 1, was denied by the Court of Appeal.  Id., Ex. F at 12-15, 23.  The California Supreme Court denied a petition for review.  Id.,

1   Ex. H.  On February 27, 2002, petitioner filed an application for writ of habeas corpus in the

2   California Supreme Court in which petitioner presented his due process claims based on denial of

3   his motion to recuse the prosecutor and vindictive prosecution, as well as failure to instruct on

4   the definition of reasonable doubt, denominated in this petition as claims 2 and 5.  Corrected

5   Fourth Am. Pet. (Am. Pet.) at 13:15-18.  The application was denied.  Id. at 16:5-10.  Original

6   claim 3, regarding ineffective assistance of counsel, has been withdrawn.  Traverse at 38.  It does

7   not appear that petitioner raised claim 4, denial of due process based on denial of a hearing on the

8   constitutionality of priors, in state court.  Am. Pet. at 13:10-20; Answer, Ex. G.[1]

9              This action currently is proceeding on petitioner's November 1, 2002 "Corrected

10  Fourth Amended Petition" filed on November 1, 2002.  Respondent's answer was filed March

11  11, 2003.  Petitioner filed a traverse on February 18, 2005.

12  II.  Standards For Habeas Corpus Relief

13             An application for a writ of habeas corpus by a person in custody under a

14  judgment of a state court can be granted only for violations of the Constitution or laws of the

15  United States.  28 U.S.C. § 2254(a).  Federal habeas corpus relief also is not available for any

16  claim decided on the merits in state court proceedings unless the state court's adjudication of the

17  claim:

18             (1) resulted in a decision that was contrary to, or involved an
               unreasonable application of, clearly established federal law, as
19             determined by the Supreme Court of the United States; or

20             (2) resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in the
21             State court proceeding.

22   28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").  See Ramirez v. Castro,

23  365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief

24

25        [1] Petitioner does appear to have made the different claim in his state court petition, that
        his trial counsel was ineffective for failing to timely challenge petitioner's priors.  Am. Pet. at
        15:2-10.  Despite the failure to exhaust claim 4 as presented here, the court is able to reach the
26      claim for reasons discussed below.

1  under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth

2  Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538

3  U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did

4  not address the merits of petitioner's Eighth Amendment claim).[2]  Courts are not required to

5  address the merits of a particular claim, but may simply deny a habeas application on the ground

6  that relief is precluded by 28 U.S.C. § 2254(d).  Lockyer, 538 U.S. at 71 (overruling Van Tran v.

7  Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district

8  courts to review state court decisions for error before determining whether relief is precluded by

9  § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief

10  by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

11          The "contrary to" and "unreasonable application" clauses of § 2254(d)(1)  are

12  different.  As the Supreme Court has explained:

13          A federal habeas court may issue the writ under the "contrary to"
           clause if the state court applies a rule different from the governing
14          law set forth in our cases, or if it decides a case differently than we
           have done on a set of materially indistinguishable facts.  The court
15          may grant relief under the "unreasonable application" clause if the
           state court correctly identifies the governing legal principle from
16          our decisions but unreasonably applies it to the facts of the
           particular case.  The focus of the latter inquiry is on whether the
17          state court's application of clearly established federal law is
           objectively unreasonable, and we stressed in Williams [v. Taylor,
18          529 U.S. 362 2000)] that an unreasonable application is different
           from an incorrect one.
19

20  Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the

21  law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply

22

23          [2]  In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals
       held in a § 2254 action that "any independent opinions we offer on the merits of constitutional
       claims will have no determinative effect in the case before us . . .  At best, it is constitutional
24     dicta."  However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain
       relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees.  Title
25     28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation
       of the Constitution before he or she may obtain habeas relief.  See Lockyer, 538 U.S. at 70-71;
26     Ramirez, 365 F.3d at 773-75.

1    fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8

2    (2002).

3          The court will look to the last reasoned state court decision in determining

4    whether the law applied to a particular claim by the state courts was contrary to the law set forth

5    in the cases of the United States Supreme Court or whether an unreasonable application of such

6    law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S.

7    919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial

8    of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court

9    must perform an independent review of the record to ascertain whether the state court decision

10   was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

11   words, the court assumes the state court applied the correct law, and analyzes whether the

12   decision of the state court was based on an objectively unreasonable application of that law.

13         It is appropriate to look to lower federal court decisions to determine what law has

14   been "clearly established" by the Supreme Court and the reasonableness of a particular

15   application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

16   III.  Arguments And Analysis

17        A. Cruel And Unusual Punishment (Claim 1)

18   _____Petitioner argues that his sentence of twenty-five-years-to-life imprisonment

19   constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Am. Pet. at

20   18-22.  For reasons that follow, petitioner's claim is barred by 28 U.S.C. § 2254(d).

21         The California Court of Appeal issued a reasoned opinion with respect to

22   petitioner's claim on direct review and denied the claim through application of state law.

23   Answer, Ex. F at 12-15.  The California Supreme Court rejected petitioner's claim without

24   explanation.  Id., Ex. H.

25        1. The "Contrary To" Prong

26         Under 28 U.S.C. § 2254(d)(1), the court first examines whether the California

1   Court of Appeal's opinion regarding petitioner's Eighth Amendment claim resulted in a decision

2   that was contrary to clearly established federal law as determined by the Supreme Court of the

3   United States.

4            In Lockyer, the Supreme Court identified what constituted clearly established law

5   with respect to petitioner's Eighth Amendment claim at the time the claim in that case was before

6   California's courts:  a sentence for a term of years to state prison cannot be "grossly

7   disproportionate" to the offense.  Lockyer, 538 U.S. at 72.  The precise contours of the gross

8   disproportionality principle are unclear and "applicable only in the exceedingly rare and extreme

9   case." Id. at 73 (internal quotation marks omitted).  In petitioner's case, the Court of Appeal

10  correctly identified the gross disproportionality principle, noting that its job was to "consider

11  whether a life sentence was unconstitutionally disproportionate on the facts of this case."

12  Answer, Ex. F at 12.

13           The Court of Appeal went on to analyze petitioner's claim under the case it relied

14  on, In re Lynch, 8 Cal.3d 410 (1972):

15           In Lynch, the California Supreme Court offered three "techniques"
             for evaluating whether a particular punishment is excessive.  The
16           first of these techniques involves an examination of "the nature of
             the offense and/or the offender, with particular regard to the degree
17           of danger both present to society."  (In re Lynch, supra, 8 Cal.3d at
             p. 425.)  The second technique requires a comparison of the
18           punishment prescribed here with that prescribed for more serious
             offenses.  (Lynch at p. 426.)  The reasoning behind this technique
19           is that, because "the Legislature may be depended upon to act with
             due and deliberate regard for constitutional restraints in prescribing
20           the vast majority of punishments set forth in our statutes," the
             existence of "more serious crimes punished less severely than the
21           offense in question" may make the challenged penalty appear
             suspect.  (Id. at p. 426.)  The third technique involves a comparison
22           of the penalty prescribed in California with the penalty prescribed
             in other jurisdictions.  Again, the purpose of this inquiry is to see if
23           the challenged penalty is disparate in comparison to "the
             punishments decreed for the offense in a significant number of
24           those [other] jurisdictions . . . ."  (Lynch at p. 427.)

25  Answer, Ex. F at 13.  The standard for determining gross disproportionality identified in the

26  Court of Appeal's decision is equivalent to the one set forth in Solem v. Helm, 463 U.S. 277,

290-92 (1983), and urged by petitioner.  See Am. Pet. at 18; Traverse at 4, 14-17.  Solem

requires that a court's proportionality analysis be guided by a consideration of:  "(i) the gravity of

the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the

same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other

jurisdictions."  Id. at 292.  Because Solem was decided well before the California Court of

Appeal issued its decision with respect to petitioner's appeal, and because Solem has not been

overruled, the Court of Appeal's reliance in this case on the Lynch standard, and its application

in particular of Lynch's first prong,  was not contrary to clearly established law.  Cf. Ewing v.

California, 538 U.S. 11, 28-30 (2003) (declining to proceed to the second and third prongs of the

Solem inquiry because the "threshold comparison of the crime committed and the sentence

imposed [did not] lead[] to an inference of gross disproportionality.").

　　　　　As noted above, a state court opinion also may be contrary to "clearly established

law" if the state court decides a case differently than has the Supreme Court on a set of materially

indistinguishable facts.  The California Court of Appeal summarized petitioner's criminal history

as follows:

> This history includes prior misdemeanor theft convictions in 1967,
> 1976 and 1983.  Defendant's extensive history also includes not
> only a host of other misdemeanor convictions and felony theft
> convictions but numerous serious and violent felony convictions.
> In 1945, when defendant was 20 years old, he was convicted of
> rape.  Less than two years later, he was convicted of burglary and
> theft.  In 1965, defendant was convicted of first degree burglary.[fn]
> Defendant was convicted of robbery, first degree burglary and
> felony theft in 1968 and committed to state prison.  He was paroled
> in 1971 and discharged from parole in 1974.  However, apparently
> during his parole period, defendant was convicted of a
> misdemeanor count of receiving stolen property in 1972 and served
> time in county jail.   In 1980, he was convicted of felony theft and
> granted probation.  A 1982 offense led to a rape conviction for
> which defendant served a state prison commitment.[3]  He was
> released from prison without parole in 1992.  In 1993, he was

---

[3]  As noted by petitioner in his traverse, petitioner's 1984 conviction for the 1982 rape
was reversed on direct appeal. Traverse, Ex. 1.  However, upon remand, petitioner pled guilty to
the 1982 rape.  See February 18, 2005 Stipulation To Expand The Record, Ex. A at 1-3.

1    convicted of failing to register as a sex offender and sent to jail.  It
     appears that he was released from jail in early 1994.
2

3    ----------------------------------------

4    [fn] While it might appear that defendant was relatively law-abiding
     in the 1950's, his lawfulness was apparently due to his
     incarceration from 1954 to 1964 in Illinois for a conviction which
5    was subsequently reversed.

6    Answer, Ex. F at 11-12.

7            In <u>Lockyer</u>, the Supreme Court compared the facts underlying petitioner

8    Andrade's Eighth Amendment claim with those presented in <u>Solem</u>, where the Court found that a

9    sentence did violate the Eighth Amendment.  <u>Lockyer</u>, 538 U.S. at 73-74.  In <u>Solem</u>, the

10   petitioner was sentenced to life without the possibility of parole under a South Dakota recidivist

11   statute based upon the following criminal record:

12           By 1975 the State of South Dakota had convicted respondent Jerry
             Helm of six nonviolent felonies.  In 1964, 1966, and 1969 Helm
13           was convicted of third-degree burglary.  [Footnote omitted.]  In
             1972 he was convicted of obtaining money under false pretenses.
14           [Footnote omitted.]  In 1973 he was convicted of Grand Larceny.
             [Footnote omitted.]  And in 1975 he was convicted of third-offense
15           driving while intoxicated.  [Footnote omitted.]  The record contains
             no details about any of these offenses except that they were all
16           nonviolent, none was a crime against a person, and alcohol was a
             contributing factor in each case.
17
             In 1979 Helm was charged with uttering a "no account" check for
18           $100.  [Footnote omitted.]  The only details we have of the crime
             are those given by Helm to the state trial court:
19
                     "'I was working in Sioux Falls, and got my check that day,
20                   was drinking and I ended up here in Rapid city with more
                     money than I had when I started.  I knew I had done
21                   something I didn't know exactly what.  If I would have
                     known this, I would have picked the check up.  I was
22                   drinking and didn't remember, stopped several places.'"
                     [Citation omitted.]
23
             After offering this explanation, Helm pleaded guilty.
24

25   <u>Solem</u>, 463 U.S. at 279-81.

26           In <u>Lockyer</u>, the petitioner Andrade's sentence of fifty-years-to-life following his

                                          8

1  convictions on two counts of grand theft stemming from two incidents of shoplifting, and the

2  finding he had suffered three prior convictions for residential burglary, was upheld.  The Court

3  ultimately found that because the facts surrounding Andrade's Eighth Amendment claim were

4  not materially indistinguishable from the facts surrounding Solem's, the state court that decided

5  Andrade's claim did not "confront a set of facts that are materially indistinguishable from a

6  decision of [the Supreme] Court and nevertheless arrive at a result different from [Supreme

7  Court] precedent." Lockyer, 538 U.S. at 73.

8          It is clear from reviewing the record in this case that petitioner's criminal history

9  is more substantial than that of Mr. Solem, because the crimes for which petitioner has been

10  convicted are more serious overall, and include prior convictions for crimes against persons,

11  giving rise to petitioner's sex offender status.  Furthermore, petitioner's sentence is not as severe

12  as that rejected in Solem in that petitioner is eligible for parole, whereas Solem would never have

13  been eligible for parole.  As in Lockyer, then, the facts underlying petitioner's Eighth

14  Amendment claim are not materially indistinguishable from those found in Solem.

15          Because the California Court of Appeal did not apply a rule different from the

16  governing law set forth in the United States Supreme Court cases applicable to petitioner's

17  Eighth Amendment claim, or decide his claim differently than the Supreme Court has on a set of

18  materially indistinguishable facts, petitioner has not shown that the rejection of his Eighth

19  Amendment claim by California courts was contrary to clearly established federal law.

20          2.  The "Unreasonable Application" Prong

21          Under 28 U.S.C. § 2254(d)(1), the court also must decide whether the California

22  Court of Appeal's opinion with respect to petitioner's Eighth Amendment claim involved an

23  unreasonable application of clearly established federal law as determined by the Supreme Court

24  of the United States.

25          In Lockyer, as noted above, petitioner Andrade presented a criminal history

26  including convictions for misdemeanor theft, first degree residential burglary, transportation of

1    marijuana, petty theft and escape.  Lockyer, 538 U.S. at 66-67.  His third strike offense was petty

2    theft with a prior conviction.  Id. at 68.  With respect to whether the California Court of Appeal

3    unreasonably applied clearly established law in affirming Andrade's sentence, the Supreme Court

4    found as follows:

5               [T]he governing legal principle gives legislatures broad discretion
               to fashion a sentence that fits within the scope of the
6               proportionality principle–the "precise contours" of which "are
               unclear." [Citation omitted.]  And it was not objectively
7               unreasonable for the California Court of Appeal to conclude that
               these "contours" permitted an affirmance of Andrade's sentence.

8

9    Id. at 76.

10            Petitioner's criminal past also is more serious than Andrade's, in light of his prior

11   convictions for crimes against persons, including the two priors for rape.  In light of the Supreme

12   Court's decision in Lockyer, the court cannot find that the California Court of Appeal breached

13   the contours of the "gross disproportionality" principle, or unreasonably applied Solem by

14   affirming petitioner's sentence.

15                  3.  Unreasonable Determination Of The Facts

16            Petitioner's Eighth Amendment claim still can overcome the hurdles erected by 28

17   U.S.C. § 2254(d)(1) if petitioner can show that the Court of Appeal's opinion with respect to his

18   Eighth Amendment Claim resulted in a decision that was based on an unreasonable

19   determination of the facts.  28 U.S.C. § 2254(d)(2).  Petitioner claims that, when viewing

20   petitioner's criminal history, "[t]he state court failed to recognize that the majority of the

21   convictions it considered were invalid or overstated."  See Traverse at 10:19-19:8.

22            Petitioner fails to point to anything indicating that a single conviction mentioned

23   by the Court of Appeal in its review of petitioner's Eighth Amendment claim has been deemed

24   "invalid."  Rather, petitioner points to the rap sheet apparently relied on by the state court, see CT

25   636-647, and the purported misleading nature of the sheet, taken alone on its face.

26   /////

1    When characterizing petitioner's criminal past, the Court of Appeal stated as

2  follows:

3       [Petitioner] has repeatedly committed serious criminal conduct and
        numerous thefts, and, notwithstanding numerous stays in jail and
4       prison over five decades, defendant has never reformed his
        conduct.
5

6  Answer, Ex. F at 14.  In his traverse, petitioner attempts to minimize his criminal past by

7  pointing to a lack of detailed support for certain convictions and arguing from the length of

8  certain sentences or their concurrent service that the underlying crimes themselves either were

9  not that serious or somehow do not count.  Traverse at 11-14.  Even if this court were to accept

10  petitioner's characterizations of his criminal history, the Court of Appeal's conclusion with

11  respect to that history is consistent with the record that was before that court, and that record was

12  not fatally flawed.  Petitioner has not shown that the Court of Appeal's rejection of petitioner's

13  Eighth Amendment claim was based upon an unreasonable determination of the facts before it.

14  _____For all the foregoing reasons, petitioner's Eighth Amendment claim should be

15  rejected.

16       B.  Refusal to Recuse Prosecutor Hanford and Vindictive Prosecution (Claim 2)

17       In his second claim, petitioner asserts that the trial court violated his right to due

18  process by denying petitioner's request that prosecutor, Thomas Hanford, be recused for

19  vindictiveness and that his right to due process also was violated because he was subjected to

20  vindictive prosecution.  Am. Pet. at 23.  Petitioner asserted claim 2 in his application for writ of

21  habeas corpus presented to the California Supreme Court.  Id. at 13:10-18.  The California

22  Supreme Court rejected claim 2 without explanation.  Id. at 16:5-10.  In the underlying

23  proceeding, the trial court did not explain its reasoning in denying petitioner's request for

24  recusal.[4]  RT 678:25-679:4.

25

26       [4]  Petitioner claims he made a request for recusal prior to trial.  Traverse at 19:13-14.  The
    portions of the record cited by petitioner in support of this assertion refer to a hearing where

11

1          The Supreme Court has found that, so long as a prosecutor has probable cause to

2    believe that an accused has committed an offense defined by a statute, whether or not to

3    prosecute and what charge to file generally rests entirely in the prosecutor's discretion.

4    Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).  However, the decision to prosecute and what

5    to charge cannot be based upon an unjustifiable classification, like race, religion or other

6    arbitrary classification.  Id.  Further, the Court has held, "to punish a person because he has done

7    what the law plainly allows him to do is a due process violation. . ." Id. at 363.

8          To establish actual prosecutorial vindictiveness, a defendant must show, through

9    objective evidence, that the prosecutor acted with genuine animus toward the defendant and the

10   defendant would not have been prosecuted but for that animus.  See United States v. Goodwin,

11   457 U.S. 368, 380 n.12 (1982).  In order to make the required showing, a defendant must

12   demonstrate that additional charges were brought solely to penalize the defendant and could not

13   be justified as a proper exercise of prosecutorial discretion.  Id.

14         If a defendant is unable to prove an improper motive with direct evidence, he may

15   present circumstances from which an improper vindictive motive may be presumed.  Blackledge

16   v. Perry, 417 U.S. 21, 27 (1974).  However, to invoke such a presumption, the circumstances

17   must "pose a realistic likelihood of 'vindictiveness.'" Id.  A presumption of vindictiveness is

18   rarely applied to a prosecutor's pretrial decisions because "a prosecutor should remain free before

19   trial to exercise [that] broad discretion entrusted to him to determine the extent of the societal

20   interest in prosecution." Goodwin, 457 U.S. at 382.  Indeed, a prosecutor's charging decision is

21   presumptively lawful.  See Bordenkircher, 434 U.S. at 364; United States v. Armstrong, 517 U.S.

22   456, 464 (1996).  Accordingly, "a change in the charging decision made after an initial trial is

23   completed is much more likely to be improperly motivated than a pretrial decision." Goodwin,

24   ────────────────────

     petitioner sought a new attorney.  Petitioner complained about the prosecutor during this hearing,
25   but the court does not construe this as an adequate request for recusal; Mr. Hanford was not
     present at the hearing, and no objection was made when the trial court indicated it would only
26   rule on whether petitioner's attorney should continue to represent petitioner.  See RT 3-16.

                                                    12

1    457 U.S. at 381.  See also Blackledge 417 U.S. at 24-29 (vindictiveness presumed where charges

2    were increased following successful appeal without change in facts supporting the charges).

3    When a presumption of vindictiveness is established, the burden shifts to the government to

4    present objective evidence justifying its conduct.  Id. at 374.[5]

5            Petitioner claims he was prosecuted for the following unlawful reasons:

6    (1) petitioner successfully appealed a 1984 rape conviction Hanford obtained (Traverse at 22:19-

7    23);  (2) petitioner had asserted with respect to that case that Hanford committed prosecutorial

8    misconduct (id. at 27:8-12, 28:12-24 ); (3) at the time charges were filed in the case underlying

9    this petition, petitioner was pursuing a federal case against Hanford for violation of civil rights

10   (id. at 31:24-32:26 ); and (4) petitioner had obtained an acquittal with respect to a rape charge in

11   the 1970s, which Hanford felt was unjustified (id. at 34:14-17).  Petitioner asserts Hanford was

12   motivated by other reasons as well in charging petitioner as he did, but none of the other reasons

13   suggested are Constitutionally impermissible under the clearly established law identified above.

14   See Traverse at 25:2-27:7 (Hanford's belief that alleged victim in 1984 rape case lost her sanity

15   based on rape by petitioner; Hanford's extremely vivid recollection of same case twenty years

16   later without having reviewed file in interim).

17           There is no direct evidence in the record to support a finding that Hanford was

18   retaliating against petitioner for the exercise of a protected right when he filed the Home Depot

19   theft charges against petitioner, including the allegations regarding petitioner's prior offenses

20   making him "three strikes" eligible.[6]  The court also cannot presume vindictiveness.  As noted

21

22           [5] The law reviewed here was clearly established when petitioner was charged with
     respect to the conviction at issue in this case, and remains so today.

23           [6] In his traverse, petitioner recounts an article that appeared in The San Jose Mercury
     News concerning Mr. Hanford.  Hanford was honored as the "Outstanding Prosecutor of the
24   Year:"

25                   In his current position, Hanford oversees the career gang unit and
                     career criminal unit, which prosecutes "three-strikes" cases.
26                   Asked about memorable cases, Hanford smiled with satisfaction as

                                                    13

1  above, courts are unlikely to find a presumption of vindictiveness with respect to actions taken

2  prior to a first trial on a particular set of facts.  There is no cause to deviate from that rule here.[7]

3  There is nothing suggesting that the decision to charge petitioner under California's "Three

4  Strikes Law" was atypical, and there is simply no other evidence indicating Hanford

5  singlehandedly dictate the initial charges against petitioner, with the primary motivation of

6  charging petitioner to retaliate against him for the exercise of a protected right in a prior case.

7  See, e.g., Traverse at 37-38 (pointing only to broad patterns of charging in the district attorney's

8  office where Hanford worked).

9          In light of the above, the California Supreme Court's rejection of claim 2 was not

10  contrary to, nor based on an unreasonable application of, clearly established law as determined by

11  the Supreme Court.   Claim 2 should be rejected.

12          C.  Use of Unconstitutional Priors And Denial Of Hearing On Constitutionality Of Prior
                Convictions (Claim 4)

13

14          After trial, petitioner moved to strike his prior convictions on grounds that those

15

16          he related the recent "three strikes" conviction he won against a
            career criminal who had eluded him once before.

17          The defendant's 1984 rape conviction had been reversed on appeal
18          [petitioner pled guilty in exchange for time-served on remand
            (Traverse, Ex. A. at 1-4)] , and the man was released from a 28-
19          year prison sentence.  This year, Hanford prosecuted him again, for
            the far less serious crime of petty theft.  But because of the "three-
20          strikes law, the defendant now faces 25 years to life.  "There's
            justice out there," Hanford said.

21  Traverse at 29:21-26; see also id. at 29:27-31:3.  The closest petitioner comes in presenting direct
22  evidence of vindictiveness is with this passage.  But this passage does not lead to the conclusion
    that Hanford prosecuted petitioner in the manner he did because petitioner appealed his 1984
23  rape conviction.  At best, it can be said that Hanford believed petitioner should have received a
    more lengthy sentence than he ultimately did for the rape and he took satisfaction in the fact that
    petitioner received twenty-five-to-life based on petty theft and his priors.
24

25      [7] Petitioner argues that the deference given to pretrial charging decisions is not warranted
    here, where the petitioner's exercise of his appeal rights and the pretrial decision occurred in
26  different cases.  Traverse at 22:13-26.  Petitioner cites no authority for the proposition,
    suggesting that it is not a statement of clearly established law.

1  convictions were unlawfully obtained.  The motion was denied without an evidentiary hearing.

2  RT 630-674.  Petitioner claims that he had a right to an evidentiary hearing under People v.

3  Sumstine, 36 Cal.3d 909 (1984) and that the denial of a "Sumstine Hearing" was a "violation of

4  federal due process, either directly guaranteed by the Fifth and Fourteenth Amendments to the

5  U.S. Constitution, or because California has a state created liberty interest which is protected by

6  the Fourteenth Amendment's Due Process Clause."  Am. Pet. at 33:6-10.

7         Petitioner is not entitled to an evidentiary hearing during a state post-conviction

8  proceeding under the Constitution itself because there is no Constitutional right to post-

9  conviction review.  See Lackawanna County Dist. Attorney v. Coss , 532 U.S. 394, 402-03

10  (2001).   As noted above, habeas corpus relief is not available for violations of state law.  28

11  U.S.C. § 2254(a).  If a state law creates a liberty interest protected by the Due Process Clause,

12  relief can be granted if the constitutionally required process was not administered.  See Hicks v.

13  Oklahoma, 447 U.S. 343, 346 (1980).  Sumstine does not create a liberty interest, i.e., anything

14  that guarantees freedom from confinement or a certain type of confinement; it merely creates a

15  process by which a criminal defendant can challenge prior convictions.

16         The court notes that this claim has not been presented to the California Supreme

17  Court.  See Am. Pet. at 13:10-20; Answer, Ex. G.  The exhaustion of state court remedies is a

18  prerequisite to the granting of a petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).   A

19  petitioner satisfies the exhaustion requirement by providing the highest state court with a full and

20  fair opportunity to consider all claims before presenting them to the federal court.  Picard v.

21  Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).

22  The court generally would dismiss an unexhausted claim but the court may deny such a claim if it

23  is "perfectly clear [petitioner] does not raise . . . a colorable federal claim."  Cassett v. Stewart,

24  406 F.3d 614, 624 (9th Cir. 2005).  See 28 U.S.C. § 2254(b)(2).  Petitioner's claim 4 is not

25  colorable and therefore should be denied.

26  /////

1    D.  Failure To Instruct On The Definition Of Reasonable Doubt In Sentence
2        Enhancement Phase (Claim 5)

3          After trial, the truth of petitioner's prior convictions was tried to the jury.  Jurors

4   were informed that, in order for them to find that petitioner did in fact sustain the prior

5   convictions charged, they would have to so find "beyond a reasonable doubt."  RT 482-483.

6   Petitioner claims that the trial court violated his right to due process by not sua sponte defining

7   the concept of "beyond a reasonable doubt" for the jury.[8]  Am. Pet. at 33-37.  This claim was not

8   presented on direct appeal; the California Supreme Court rejected the claim without explanation

9   when denying petitioner's application for writ of habeas corpus.

10          In Victor v. Nebraska, 511 U.S. 1, 5 (1994), the Supreme Court found that, while

11  jurors must be informed that they may only find guilt if guilt has been proven to them "beyond a

12  reasonable doubt," the Constitution does not demand that the term "beyond a reasonable doubt"

13  itself be defined for jurors.  The Fourteenth Amendment only requires that the trial court instruct

14  the jury that the defendant's guilt must be proven beyond a reasonable doubt.  No specific words

15  are required, but, taken as a whole, the jury instructions must "correctly convey the concept of

16  reasonable doubt to the jury."  Id.  Petitioner asserts "beyond a reasonable doubt" should have

17  been defined for jurors at a sentence enhancement hearing, while Victor concerns a determination

18  of guilt.  But there is nothing to suggest the distinction matters, and petitioner cites to no

19  controlling authority to support his argument.

20          The trial judge gave the jury an explicit definition of reasonable doubt in the guilt

21  phase instructions to the jury.  RT 447.  In instructions at the enhancement phase, the judge

22  repeatedly stated that the jury must find beyond a reasonable doubt that petitioner had previous

23

24          [8]  In his traverse, petitioner also claims that his Sixth Amendment rights were violated by
    the trial court's failure to define "beyond a reasonable doubt" at the sentence enhancement phase.
    Traverse at 17-20.  This claim was not made in petitioner's "Corrected Fourth Amended
25  Petition" and cannot be raised for the first time in a traverse.  Cacoperdo v. Demosthenes, 37
    F.3d 504, 507 (9th Cir. 1994).  In any case, for the reasons that follow, petitioner's claim has no
26  merit.

                                           16

1   felony convictions and that he served a prison term.  RT 480-483.  The judge also made the

2   written instruction on the definition of reasonable doubt available to the jury upon request.  RT

3   480.  Taken as a whole, the jury instructions for the enhancement phase correctly conveyed the

4   concept of reasonable doubt to the jury.

5           In light of <u>Victor</u>, the California Supreme Court's rejection of petitioner's fifth

6   claim was not contrary to clearly established federal law, nor based on an unreasonable

7   application thereof.

8   IV.  <u>Conclusion</u>

9   _____For all the foregoing reasons, petitioner's application for a writ of habeas corpus

10  should be denied.

11          IT IS HEREBY RECOMMENDED petitioner's application for a writ of habeas

12  corpus be denied.

13          These findings and recommendations will be submitted to the United States

14  District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within

15  twenty days after being served with these findings and recommendations, any party may filed

16  written objections with the court and serve a copy of all parties. Such a documents should be

17  captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the

18  objections shall be served and filed within five days after service of the objections. The parties

19  are advised the failure to file objections within the specified time may waive the right to appeal

20  the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

21  DATED:  September 2, 2005.

22

23

24  _____
    UNITED STATES MAGISTRATE JUDGE

25

26  1/ja nune1333.157